IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY HARVEY,<br><br>      Petitioner,<br><br>vs.<br><br>MICHAEL CAPRA, Superintendent, Sing Sing Correctional Facility,<br><br>      Respondent. | No. 9:14-cv-00577-JKS<br><br>MEMORANDUM DECISION |

  Gregory Harvey, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Harvey is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Sing Sing Correctional Facility. Respondent has answered the Petition, and Harvey has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On May 2, 2006, Harvey was charged with first-degree rape, third-degree assault, second-degree unlawful imprisonment, and fourth-degree criminal mischief in connection with an incident that took place at the Holiday Motel in the Town of Schuyler on March 13, 2006. Upon request, Harvey was examined by the Rochester Psychiatric Center. The Center's report indicated that Harvey was unable to assist his attorney in his own defense. At a hearing before the county court on the issue, Harvey denied that he was incompetent, but the court committed him to the custody of the Office of Mental Hygiene.

  In October 2006, the court received a report from Mid-Hudson Forensic Psychiatric Center that determined that Harvey was fit to proceed. Defense counsel requested a competency hearing, which was held on February 28, 2007. At the hearing, Harvey was warned after a

number of disruptions that he would be removed.  Harvey then interjected that there was no evidence of his crimes, that he had not been indicted, and that he would sue the court.  Harvey was forcibly removed from the courtroom, and the county court placed on the record that Harvey was constantly shouting at the court while the court was attempting to speak as the cause for removal.  Dr. Phone Win, a forensic psychiatrist and pathologist at Mid-Hudson Psychiatric Center testified that Harvey understood the charges against him and the trial process and was mentoring other patients.  He testified that Harvey understood the importance of working with his attorney and his belief that Harvey was fit to proceed.  The court deemed Harvey competent to stand trial.

On May 21, 2007, the court held a hearing to determine if Harvey would be shackled during the trial.  Officer Barnes, a corrections officer, testified as to incident reports at the facility housing Harvey, which referred to seven separate instances involving harassment, threats, tampering, disorderly conduct, damage, and contraband.  Sergeant Hart testified that, two weeks prior to the hearing, Harvey refused to take his medicine and threatened in writing to kill the sheriff and his family on the refusal form.  The court also agreed to the prosecution's request that it take judicial notice of Harvey's removal from the competency hearing.  Harvey also testified.  He indicated that no other facility would take him due to his behavior, even though he is supposed to be at a facility with a 24-hour medical staff and mental health counselor.  Harvey asserted that his rights were being violated and that he wished to file lawsuits against the facility. When his attorney asked him if he could make assurances to the court that he could proceed to trial without shackles, Harvey stated that he had no problem with court.  The court stated that it was concerned with Harvey's previous appearance and with the recent specific threat.  The court

concluded that, based on Harvey's prior attitude and actions in the courtroom, Harvey would remain shackled during trial for safety concerns. The court directed that Harvey's writing hand remain free and that he be supplied with a soft-tipped writing instrument. Prior to jury selection, the court advised the jury that Harvey was in custody, had deputies around him, and was in handcuffs. The court instructed the jurors that the fact Harvey was in custody was not evidence and could not be considered evidence and that the jury must afford him the presumption of innocence. The jury asked for, and received, the panel's assurance that they could provide that presumption.

During trial, the victim testified that she had been in a sexual relationship with Harvey and was with him at the Holiday Motel on the evening of March 13. According to the victim, Harvey went through her phone and found a man's name in it, which caused them to argue. Over a half-hour period, Harvey hit her numerous times, causing her to repeatedly hit the floor. When she tried to dial 911, Harvey smashed her phone and threw her on the bed. The victim testified that Harvey forced himself inside of her multiple times, while she kept saying "no." She asked to leave, but Harvey would not let her. She testified that she spent the night there because she was scared and Harvey had threatened to hurt her kids. She testified that, the following day, she remained in the room after Harvey left and the maid came. She replied "yes" when the maid asked if she needed help, and told the maid what had happened. The maid called a woman's shelter, who arranged for a cab to take her to a safe place in Utica. The following day, the victim was taken to the emergency room. Upon stipulation, the victim's medical records from the hospital were admitted as an exhibit. Upon cross-examination, the victim stated that it was not until March 15, two days after the incident, that the maid came and she left the

room. She testified that Harvey stayed in the room on March 14. Employees for the cab company and the hotel testified that a cab company picked up the victim from the hotel on March 15. A witness at the hotel testified that he had heard a woman crying from Harvey's room on the evening of March 13. A representative from Harvey's employer testified that Harvey's time sheet indicated that he did not work on March 14. Finally, a law enforcement officer testified that he interviewed the victim on March 15 and took her statement and photos of her. The prosecution then rested. The defense then moved for dismissal of the rape charge on the ground that it was not supported by physical evidence, and the medical records showed no trauma to the vaginal area, and also moved to dismiss the unlawful imprisonment charge for lack of evidence. The court denied the motion, finding that the arguments went solely to the weight of the evidence. The defense then rested.

The jury found Harvey guilty of all counts of the indictment except for fourth-degree criminal mischief. Harvey later appeared with counsel for sentencing and immediately swore at the court and called the judge a racist. The court indicated that sentencing would continue despite Harvey's profanities. The court gave Harvey a sentence of 20 years' imprisonment on the first-degree rape conviction, with 5 years of post-release supervision. Harvey was sentenced to 1-year imprisonment on each of the third-degree assault and unlawful imprisonment convictions, to run concurrently with the rape sentence.

Through counsel, Harvey appealed his conviction, arguing that: 1) his shackling during trial violated his constitutional rights; and 2) the verdict was against the weight of the evidence and not supported by legally sufficient evidence. Harvey also submitted a *pro se* supplemental brief, in which he argued that: 1) his trial counsel was ineffective; 2) the state police did not have

probable cause to arrest him; 3) the prosecutor withheld exculpatory information; and 4) the trial judge was biased against him. On November 9, 2012, the Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Harvey in a reasoned opinion. *People v. Harvey*, 953 N.Y.S.2d 439, 440 (N.Y. App. Div. 2012). Harvey sought in the New York Court of Appeals review of the claims raised in both his counseled and supplemental briefs. The Court of Appeals summarily denied leave on May 14, 2013.

The record indicates that Harvey then attempted to file a writ of error coram nobis in the Appellate Division, but the motion papers were returned to him as improperly filed. The record does not indicate that Harvey re-filed the papers in the Appellate Division. Rather, he sought leave in the Court of Appeals to appeal the Appellate Division's rejection of his motion papers, which Respondent indicates was not received by the Court of Appeals.

Harvey then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on May 12, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Harvey argues that: 1) his arrest and indictment were illegal; 2) the prosecutor wrongfully withheld exculpatory evidence; 3) his trial and appellate counsel were ineffective; and 4) he is actually innocent of the crimes of which he was convicted.[1]

---

[1] In a filing dated more than two weeks after his Petition, Harvey summarily states that he was "wrongfully convicted as a[] mentally ill incompetent to stand trial." Likewise, Harvey first mentions his shackling in his Traverse. His Petition, however, does not challenge the trial court's determinations that he was competent to stand trial and required to be shackled and does not refer to those issues in any way. The Court does not ordinarily consider grounds raised after the initial Petition. "The petition must (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief

5

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application

---

requested . . . ." Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012) (emphasis added). To the extent that Harvey wishes to raise additional grounds, the proper procedure would be to file a motion to amend the petition under Federal Rule of Civil Procedure 15. In this case, however, such motion would futile because the amendment would not relate back to the initial filing and would, therefore, be barred by the one-year limitation period of 28 U.S.C. § 2244(d)(1). *See Mayle v. Felix*, 545 U.S. 644, 655-64 (2005) (discussing at length the interplay between Habeas Rule 2(c) and Fed. R. Civ. R. P. 15). In any event, Harvey did not present to the state courts any claim challenging the competency determination, and it is therefore unexhausted. Accordingly, the Court will not consider the trial court's findings that Harvey was competent and should be shackled at trial.

of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

## A. Exhaustion

As Respondent correctly contends, a number of Harvey's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Harvey did not assert in constitutional terms his claim that the indictment was illegal. Likewise, he did not raise at all to the state courts his actual innocence claim. Because it appears that these unexhausted claims are based on the record, they could have been raised on direct appeal but were not; consequently, Harvey cannot bring a motion to vacate as to such claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Accordingly, they may be deemed exhausted but procedurally defaulted. *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

Harvey did not properly raise before the state court his claim that appellate counsel was ineffective. Although he attempted to file a coram nobis motion, the Appellate Division returned it to him without considering it due to filing defects, which the record does not indicate Harvey fixed. But because Harvey can still bring a coram nobis motion in the Appellate Division, his claim is not procedurally defaulted. But even if Harvey could still exhaust this claim in state court, the Court declines to stay the Petition and allow Harvey to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). Harvey has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Despite Harvey's failure to exhaust his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and instead reach the merits of the claims as discussed below.

B.   Merits

In any event, even if Harvey had fully exhausted his claims before the state courts, he still would not be entitled to relief on them. For the reasons discussed below, the Court denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As further discussed below, the Court also denies relief on the merits of his exhausted claims.

   1.   *Illegal arrest and indictment* (Ground 1)

Harvey first argues that his conviction should be reversed because: a) he was arrested without probable cause; and 2) the grand jury process was defective. His wrongful arrest claim is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[2]" federal habeas corpus relief will not lie for a claim that evidence recovered through an

---

   2      The Fourth Amendment provides:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Harvey has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Harvey therefore cannot prevail on his challenge to the legality of his arrest.

---

describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Harvey fares no better with respect to the grand jury proceedings because his subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)). Harvey is therefore not entitled to relief on his claim that the indictment was defective.

2. *Prosecutorial misconduct* (Ground 2)

Harvey next contends that the prosecutor wrongfully withheld exculpatory *Brady*[3] and *Rosario*[4] material. Under *Rosario*, codified in CPL § 240.45, the prosecution must turn over to the defendant all written or recorded testimony of any person the prosecutor intends to call as a witness.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

[4] *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). The term "*Rosario*" is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

173 N.E.2d at 883. *Rosario* claims, however, are state law claims, not founded on either the federal constitution or federal laws, which are not cognizable in a federal habeas proceeding. *See, e.g.*, *Young v. McGinnis*, 411 F. Supp. 2d 278, 329 (E.D.N.Y. 2006); *Randolph v. Warden, Clinton Corr. Facility*, No. 04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law").

Harvey's *Brady* claim also must fail. "To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). In his *pro se* supplemental appellate brief, Harvey argued that the prosecutor failed to disclose that the State waived the victim's DWI fine in exchange for her "false testimony," the trial testimony of law enforcement was "impeaching testimony" because the victim did not file a police report against him, the prosecutor failed to provide the defense a copy of the felony hearing transcript, and the prosecutor failed to provide evidence that he coached the victim to lie at trial.

None of Harvey's claims have merit. He provides no evidence that the prosecution waived the victim's DWI fine, and the record reflects that the victim testified that she had already paid $500 of the $790 that she owed and was continuing to make payments. He also does not contend that the prosecution withheld any evidence with respect to the law enforcement testimony. Harvey also states that a county court judge informed him that the felony hearing transcript did not exist; it therefore could not be suppressed, and, indeed, any hearing would have occurred in his presence and with his full knowledge. Finally, he provides no evidence whatsoever to suggest that the victim lied

13

at trial or that the prosecutor persuaded her to do so. He therefore is not entitled to relief on this ground.

   3.  *Ineffective assistance of counsel* (Ground 3)

Harvey next faults trial and appellate counsel for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Harvey must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v.*

14

*Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need n ot demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Harvey's ineffective assistance claims must fail, however, even under the more favorable New York standard. He first contends that trial and appellate counsel should have raised his

15

*Brady/Rosario* claims. But as discussed above, those underlying claims are without merit. Counsel therefore cannot be deemed ineffective for failing to raise them. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims). He likewise argues that appellate counsel was ineffective for failing to brief his challenge to the legal sufficiency of the evidence presented during the grand jury proceedings. The record, however, shows that Harvey himself raised that claim in his *pro se* supplemental brief. He therefore cannot establish that he was prejudice by his attorney's failure to raise on direct appeal arguments that he himself raised and were subsequently rejected. *See Liggan v. Senkowski*, No. 11 Civ. 1951, 2013 WL 3853401, at *32 (S.D.N.Y. July 26, 2013) (Report & Recommendation) (collecting cases and finding no ineffective assistance of appellate counsel claim survives where petitioner himself raised the claim through a *pro se* supplemental submission). Harvey is therefore not entitled to relief on any argument advanced in support of his ineffective assistance claims.

    4.    *Actual innocence* (Ground 4)

Finally, Harvey argues that he is actually innocent of the crimes of which he was convicted. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the

question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Harvey has fallen short of establishing his actual innocence. He points to no evidence that exonerates him of the crime, but rather challenges the credibility and value of the evidence against him. Construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Petition therefore argues that the evidence against him is legally insufficient to sustain his convictions. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This

Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Here, Harvey attacks the value of the evidence against him, primarily claiming that the witness lacks credibility because there was no corroborating medical evidence that she was raped.

But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, the testimony and evidence presented at trial were more than sufficient to support Harvey's conviction, particularly given the deference required under *Jackson*. Accordingly, Harvey is not entitled to relief on this ground in any event.

## V. CONCLUSION

Harvey is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: March 29, 2017.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge